IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BEVERLY PETERS and TIM PETERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MEDICAL MUTUAL OF OHIO, RESERVE NATIONAL INSURANCE COMPANY, and KEMPER LIFE AND HEALTH COMPANY,<br><br>Defendants. | Case No. 1:24-cv-6949<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiffs Beverly and Tim Peters, individually and on behalf of all others similarly situated, file this Class Action Complaint against Defendants Medical Mutual of Ohio ("Medical Mutual"), Reserve National Insurance Company ("Reserve National"), and Kemper Life and Health Company ("Kemper Health"). In support thereof, Plaintiffs state and allege as follows:

**INTRODUCTION**

1. This case involves a situation none of us hopes to ever be in—having our insurance terminated while receiving ongoing benefits for our claim.

2. Plaintiffs found themselves in this situation after discovering that Mr. Peters had Stage III Colon Cancer. At first, despite the tragic diagnosis, Mr. Peters and his wife felt fortunate to have purchased and paid premiums for Cancer and Specified Disease Coverage issued by Defendant Reserve National. For several months, they received benefits from Defendants for their claim.

1

3. Yet, on December 19, 2022, Plaintiffs were sent an impersonal letter informing them that their coverage would end in roughly two months. No reason or explanation for the termination was given. After February 28, 2023, the benefit payments stopped.

4. Plaintiffs are not alone. Upon information and belief, all of those who were insured through Reserve National's ported Cancer and Specified Disease Coverage abruptly lost their insurance when Reserve National was acquired by Medical Mutual.

5. This case challenges Defendants' blatant disregard of the terms of their policies and, more importantly, their indifference toward their insureds in their insureds' most critical time of need—a time of need that these insureds planned for by paying premiums for Defendants' "coverage." Because of Mr. Peters' and other putative class members' diagnosis, it will be impossible for Plaintiffs and putative class members to find the same coverage elsewhere.

## PARTIES

6. Plaintiffs Beverly and Tim Peters are individuals and residents of Lawrenceburg, Tennessee.

7. Defendant Medical Mutual of Ohio is an Ohio corporation with its principal place of business in Cleveland, Ohio. Medical Mutual does business in the state of Illinois through its subsidiary, Defendant Reserve National. Medical Mutual may be served at 100 American Road, Cleveland, Ohio 44144.

8. Defendant Reserve National Insurance Company is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma. Defendant Reserve National was a subsidiary of Kemper Life and Health Company until December 1, 2022 when it became part of Medical Mutual. Less than two weeks after the acquisition, Plaintiffs and other putative class members were notified that their Cancer and Specified Disease Coverage had terminated.

Defendant Reserve National is licensed and does business in Illinois and may be served at 601 East Britton Rd, Oklahoma City, Oklahoma 73114.

9.  Defendant Kemper Life and Health Company is a part of the Kemper family of companies. As noted above, Defendant Reserve National was a subsidiary of Kemper Life and Health Company until December 1, 2022. Plaintiffs' Certificate of Insurance bears the Kemper logo, as do several benefit payment checks made to Plaintiffs. The Kemper Service Center also sent Plaintiffs the December 19, 2022 termination letter, informing them that their cancer coverage was being terminated. The termination letter explained that Reserve National was no longer affiliated with Kemper but was allowed to temporarily continue using its trademarks pursuant to a licensing agreement with Kemper Corporation. Kemper Health is an Illinois company with its principal place of business in Chicago, Illinois. Kemper Health may be served at 200 East Randolph Street, Suite 3300, Chicago, Illinois 60601.

## JURISDICTION & VENUE

10.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000.

11.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district and the Defendants are subject to personal jurisdiction in this district. Specifically, Defendant Kemper Health has its principal place of business in Illinois. Communications regarding Plaintiffs' Certificate of Insurance, including the December 19, 2022 termination letter, as well as benefit payments received under the Certificate of Insurance originated with Kemper Health. Moreover, upon information and belief, Kemper Health trained agents who sold the Group Policies at issue to

promote the "total portability" of the coverage, meaning that coverage would not be arbitrarily terminated due to cancellation of the underlying Group Policy, retirement, change in employment, etc.

## GENERAL ALLEGATIONS

*Group Cancer and Specified Disease Coverage*

12. Plaintiffs owned a Certificate of Insurance for a Group Cancer and Specified Disease Insurance Policy issued by Defendant Reserve National, which, at the time of issuance, was a subsidiary of Defendant Kemper Health. A true and accurate copy of the Certificate is attached hereto as Exhibit A and incorporated herein by reference.

13. The underlying Group Policy, bearing policy number KB20861, was issued to the Lawrence County School System. Mrs. Peters is a schoolteacher with the Lawrence County School System in Lawrenceburg, Tennessee.

14. The Policy had an effective date of September 1, 2019. Mrs. Peters purchased coverage under the school's Group Policy two years later. The Certificate issued to Mrs. Peters, bearing Certificate Number CA000281585, was effective on September 1, 2021.

15. Plaintiffs purchased family coverage and paid monthly premiums of $83.64 from September 2021 to March 2024.

16. Upon purchasing the insurance, Mrs. Peters received a letter from Defendant Reserve National stating: "We believe the product you purchased is among the best supplemental insurance coverage available in the marketplace today. . . . Enclosed you will find your Certificate of Insurance . . . . Your Certificate provides full details of your coverage, including the effective date and the benefits provided."

17. The face of the Certificate states: "This Certificate explains the insurance benefits issued to the Policyholder named in the Schedule of Benefits. We agree to pay the benefits to each Insured Person in accordance with the terms of the Policy and any attached Rider(s)." *See* Ex. A at p. 1.[1]

18. Below is a description of the coverage that Mrs. Peters and her family were to receive per the terms of the Certificate:

**CANCER AND SPECIFIED DISEASE BENEFITS**

| DESCRIPTION OF COVERAGE | BENEFIT AMOUNT |
|---|---|
| **First Diagnosis Benefit** | $10,000.00 |
| **Hospital Confinement Benefit per Insured Person per day** | $200.00 |
| **Colony Stimulating Factors Benefit per Insured Person per Calendar Month** | $1,000.00 |
| **Surgical Schedule Maximum** | $3,000.00 |
| **Radiation/Chemotherapy/Immunotherapy Benefit per Calendar Month** | $10,000.00 |
| **Wellness Benefit per Calendar Year** | $100.00 |
| **Non-Melanoma Skin Cancer Diagnosis Benefit per Calendar Year** | $100.00 Maximum |

*See id.* at p. 3.

19. Defendants agreed to pay benefits "for a Positive Diagnosis that is made while th[e] Certificate has remained in force." *Id.* at p. 6. Although several pages of the Certificate describe the benefits, the term "benefit" is never defined in the Certificate.

---

[1] Page numbers are to the printed number on the policy pages, not the docketed ECF number.

20. "Claim" is also not a defined word. However, when an insured has a claim, they must give written notice "within 20 days after a covered loss occurs or starts, or as soon as reasonably possible." *Id.* at p. 16. Note that "loss" or "covered loss" are also not defined terms.

21. Once Defendant Reserve National receives "notice of claim," it "will give or provide the Insured Person forms for filing proof of loss." *Id.*

22. The "Proof of Loss" provision states:

> If the Policy provides for periodic payment for a continuing loss, written proof of loss must be given to Us within 90 days after the end of each period for which We are liable. For any other loss, written proof must be given within 90 days after such loss. If it was not reasonably possible to give written proof in the time required, We will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, except in the absence of legal capacity, the proof required must be given no later than one year from the time specified.

*Id.* Note that "continuing loss" is also not defined within the Certificate.

23. Per the terms of the Certificate, upon receipt of the written proof of loss, Defendant Reserve National was obligated to pay benefits immediately unless the benefit was payable by periodic payments, in which case they would be paid monthly. *Id.*

***Termination and the Portability Provision***

24. According to a letter from Defendant Medical Mutual to the Tennessee Department of Commerce and Insurance, Defendants received a request from the Lawrence County School System for termination of the Group Policy with an effective termination date of August 31, 2022.

25. The Certificate states:

> Insurance for the Insured will terminate, subject to the Portability provision, on the earliest of the following dates:

6

1. The end of the month on or following the date the Insured ceases to be a member of an Eligible Class shown in the Policy Schedule provisions;
2. The end of the month on or following the date the Eligible Class to which the Insured is a member is no longer an Eligible Class for coverage under the Policy;
3. The end of the month on or following the date We receive the Insured's written request for termination of coverage;
4. The end of the Grace Period following the date any required premium for the Insured has not been paid;
5. The date of the Insured's death;
6. The date the Policy is cancelled or terminated;
7. The end of the month on or following the date the Insured ceases to be a member of an Eligible Group shown in the Policy Schedule provisions; or
8. The end of the month on or following the date the Eligible Group to which the Insured is a member is no longer an Eligible Group for coverage under the Policy.

*Id.* at pp. 17-18.

26. As noted above, although the Certificate notes that termination of coverage may be triggered on the "date the Policy is cancelled or terminated," the Certificate also notes that "[t]ermination of coverage under the Policy will not affect a claim that existed on the date of termination." *Id.* at p. 18.

27. The Spouse Rider also clearly states that "[t]ermination of coverage under this Rider will not affect a claim that existed on the date of termination." *Id.* at Spouse Rider, p. 2.

28. The Certificate allowed insureds to port their coverage under certain circumstances so that they could continue receiving the benefits of coverage despite a change in employment or the cancellation or termination of the underlying Policy. Total portability was a key selling feature of the Certificates. Specifically, the Portability Provision provides:

> **Portability Provision.** If the Insured's coverage under the Policy terminates, the Insured may have the right to apply to continue coverage under the Policy. If the Insured elects to continue coverage under this Portability provision, the Insured may elect to include his or her Insured Spouse and/or Insured Dependent

7

> Child(ren), if any, covered under a Spouse Rider and/or Dependent Child(ren) Rider attached to the Policy/Certificate. Application for coverage under this Portability provision and payment of the first premium for Portability coverage must be received by Us within 30 days after the date the Insured's coverage ends.
>
> . . .
>
> Coverage for an Insured Person under this Portability provision will be the same coverage for the Insured Person under the Policy as of the date coverage ended under the Policy and subject to the same provisions, exclusions and limitations of the Policy.
>
> . . .
>
> Portability coverage will end on the earliest of the following:
> 1. The date of the Insured's death;
> 2. The end of the Grace Period following the date the Insured fails to pay the required premium;
> 3. The end of the month on or following the date the Insured is again covered under the Policy; or
> 4. The date coverage under this Portability provision is cancelled or terminated by Us for any reason upon 31 days advanced notice.

*Id.* at p. 18. According to the Certificate, once Portability coverage is cancelled or terminated, it cannot be reinstated. *Id.*

29. Plaintiffs properly submitted and Defendant Reserve National received a signed Portability Enrollment Form and bank draft authorization to secure Portability Coverage.

***Mr. Peters' Cancer Diagnosis***

30. Tim Peters was originally diagnosed with colon cancer in September 2018.

31. Mr. and Mrs. Peters submitted a "Claim Form – Cancer/Specified Disease Coverage" to Defendant Reserve National on May 23, 2022 indicating that Mr. Peters had received a diagnosis via pathology of Stage III Colon Cancer on April 15, 2022. He began receiving treatment on May 11, 2022. Attached to Plaintiffs' claim form was an "Attending

8

Physician's Statement – Cancer/Specified Disease Coverage" along with a pathology report confirming the diagnosis.

32. Although his original diagnosis was prior to the effective date on the Certificate, the Exclusions and Limitations set out in the Certificate allow for coverage of pre-existing conditions after a certain amount of time has elapsed under the Certificate. Thus, Mr. Peters was not paid the $10,000 First Diagnosis benefit, but Defendants did pay him benefits under the Certificate for costs related to his colon cancer treatment.

33. Plaintiffs "proved their losses" pursuant to the terms of the Certificate for dates of service from April 15, 2022 through the present. In response, Defendants issued Explanation of Benefits letters. Defendants also issued benefits checks for a portion of the services Mr. Peters received from April 2022 through February 2023.

***Defendants' Surprise Cancellation***

34. Via letter dated December 19, 2022, Defendant Kemper Health "regret[ted] to inform" Mrs. Peters that her "Cancer coverage has terminated effective 2.28.2023." No reason or explanation was given. In fact, the body of the letter simply stated:

> Dear Beverly Peters,
>
> We regret to inform you that your Cancer coverage has terminated effective 2.28.2023. Please refer to your Certificate of Coverage for additional details.
>
> If you have questions and would like to speak directly to a Customer Service Specialist, please call the Kemper Service Center toll free at 844.613.6245 or email us at port@kemperbenefits.com.
>
> Kemper Service Center

*See* Letter from Kemper Service Center to Beverly Peters (Dec. 19, 2022), attached as Exhibit B.

9

35. Upon information and belief, this was a standard form letter sent to all of Defendant Reserve National's insureds who ported coverage of a Cancer and Specified Disease Certificate issued by Defendant Reserve National, or its predecessors.

36. Coinciding with the abrupt termination of Portability Coverage promised to the Plaintiffs was the fact the Defendants were closing their deal to have Defendant Medical Mutual acquire Defendant Reserve National from Defendant Kemper Health. In fact, the termination letters were sent just days after the acquisition was completed. *See, e.g.*, *Medical Mutual Finalizes Acquisition of Reserve National Insurance Company*, MEDICAL MUTUAL (Dec. 8, 2022), https://www.medmutual.com/About-Medical-Mutual/Newsroom/2022/December/Medical-Mutual-Finalizes-Acquisition-of-Reserve-National-Insurance-Company.aspx.

37. Upon information and belief, as part of the acquisition of Reserve National by Medical Mutual, the Defendants collectively executed a plan to terminate substantially all of the Group Certificate health coverage Reserve National had in force on its books, in effect closing a book of business that was providing accident and health coverage to over 30,000 insureds.

38. Despite receiving the termination letter, Plaintiffs continued to submit charges to Defendants for the continuing losses related to Mr. Peters' cancer. As noted above, Defendants paid for a portion of Mr. Peters' treatment received through February 2023. However, Defendants stopped paying benefits for treatment received after February 2023. When Plaintiffs submitted charges for service arising from his colon cancer treatment rendered after February 2023, Defendants denied them. Defendants' stated reason for the denial was "[n]o coverage for date of service."

39. Because they were being treated unfairly, Plaintiffs filed a consumer complaint with the Tennessee Department of Commerce and Insurance on April 27, 2023. Therein, Mrs. Peters explained that she had received a letter from Defendants stating that her coverage would end on February 28, 2023 and that her latest claim for services had been denied for lack of coverage. Mrs. Peters cited to the termination provision of her Certificate which states: "Termination of coverage under the Policy will not affect a claim that existed on the date of termination." Ex. A at p. 18. Thus, Plaintiffs reasonably expected that Defendants would continue providing benefits for their claim of coverage for Mr. Peters' cancer diagnosis for as long as Mr. Peters received treatment for his cancer conditioned only on the payment of premiums.

40. On May 11, 2023, Mrs. Peters received a written response from Defendant Medical Mutual to her complaint with the Tennessee Department of Commerce and Insurance. In its response, Defendant Medical Mutual took the position that it could terminate Portability coverage "for any reason upon 31 days advanced notice." Thus, according to Defendant Medical Mutual, Mr. Peters was not entitled to benefits for any continuing losses incurred after Defendant Medical Mutual's unilateral termination date of February 28, 2023.

41. On May 25, 2023, the Tennessee Department of Commerce and Insurance sent Mrs. Peters a letter without issuing any finding in either party's favor and stating that their mediation efforts had been exhausted and they were closing their investigation file.

42. Plaintiffs bring this action to recover the benefits they have lost to date and to require Defendants to perform per the terms of their contract, providing Mr. Peters with the benefits he is entitled to for his ongoing claim. Plaintiffs seek to represent a class of individuals who similarly lost their coverage as a result of Defendants' conduct.

## CLASS ACTION ALLEGATIONS

43. Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23 against Defendants on their own behalf and on behalf of the nationwide class defined below:

> All persons in the United States who were issued a Certificate for Cancer and Specified Disease Coverage by Defendant Reserve National Insurance Company that was not covered by the Employment Retirement Income Security Act ("ERISA") and who were receiving benefits under the Certificate when their coverage was terminated by Defendants after Defendant Medical Mutual acquired Defendant Reserve National.

44. Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, any of the officers, directors, or employees of any Defendant, the legal representatives, heirs, successors, and assigns of any Defendant, anyone employed with Plaintiffs' counsel's firms, and any judge to whom this case is assigned and their immediate family.

45. Plaintiffs' class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

46. While the exact number of class members cannot be determined without discovery, it is estimated that the persons who fall within the class number in at least the hundreds. Thus, the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail.

47. There are questions of fact and law common to the class that predominate over any questions affecting only individual members. These common questions of law and fact include but are not limited to:

    a.    Whether Defendants were legally permitted to terminate coverage while an insured was receiving benefits for cancer or a covered disease under Portability coverage;

    b.    Whether Defendants breached the terms of their standard contracts for Portability coverage with the Plaintiffs and class;

    c.    Whether Defendants breached the duty of good faith and fair dealing;

    d.    Whether the class sustained damages as a result of Defendants' conduct; and

    e.    Whether the class is entitled to damages as a remedy for Defendants' conduct.

48.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

49.    Plaintiffs' claims are typical of class members' claims.  Plaintiffs and class members all suffered the same type of harm.  Plaintiffs have substantially the same interest in this matter as all other class members, and their claims arise out of the same set of facts and conduct as the claims of all other class members.

50.    Plaintiffs are adequate representatives of the class because they are members of the class and their interests do not conflict with the interests of those they seek to represent.  The interests of the class members will be fairly and adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex class litigation.

51. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts, which could result in inconsistent adjudications while a single class action can determine, with judicial economy, the rights of all class members.

### COUNT I: BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

52. Plaintiffs re-allege and incorporate by reference herein each and every allegation stated above.

53. Plaintiffs and the class entered a contract with Defendants for cancer and specified disease insurance coverage.

54. The Certificate and Class Certificates are valid and enforceable contracts between Plaintiffs and the class, and Defendants.

55. Per the terms of their Certificates, Plaintiffs and putative class members would receive certain benefits from Defendants for their covered losses.

56. Specifically, according to the first page of the Certificate, Defendants agreed to "pay the benefits to each Insured Person in accordance with the terms of the Policy and any attached Rider(s)." Ex. A at p. 1. Defendants agreed to pay benefits "for a Positive Diagnosis that is made while th[e] Certificate has remained in force." *Id.* at p. 6.

57. Plaintiffs and putative class members substantially performed their obligations under the terms of the Certificate and Class Certificates.

58. The Certificate requires the Insured Person to give Defendants a "written notice of claim . . . within 20 days after a covered loss occurs or starts, or as soon as reasonably possible."

*See id.* at p. 16. Plaintiffs submitted a Cancer Claim Form dated May 23, 2022 and attached an Attending Physician's Statement confirming Mr. Peters' cancer diagnosis.

59. After Plaintiffs submitted their notice of claim, they were required to submit a written proof of loss within 90 days of the loss or continuing loss. Plaintiffs complied with this provision each time they requested benefits under the Certificate for Mr. Peters' covered claim.

60. When the Lawrence County School System terminated the underlying Group Policy, Plaintiffs "ported" their coverage under the Portability Provision. Pursuant to the Portability Provision, Plaintiffs were to receive the same coverage that they were receiving before termination of the underlying Group Policy.

61. The Certificate and Spouse Rider both clearly state that termination will not affect an existing claim: "Termination of coverage under the Policy will not affect a claim that existed on the date of termination." *Id.* at p. 18; *see also id.* at Spouse Rider, p. 2.

62. Defendants breached the terms of their Portability coverage when they terminated Plaintiffs' insurance coverage. Mr. Peters had an existing claim—he had cancer and was still receiving treatment for his cancer—when Defendants terminated Plaintiffs' coverage.

63. Likewise, Defendants breached the Class Certificates when they terminated putative class members' insurance coverage despite their existing claims.

64. Plaintiffs and putative class members bargained for and reasonably expected to obtain the benefits described in their Certificate if a family member was diagnosed with cancer or a specified disease. Plaintiffs and putative class members timely paid their premiums under the Certificates to protect themselves in the event of such a diagnosis. Defendants bargained for and reasonably should have expected to be exposed to this risk. Defendants failed to maintain their end of the bargain.

65. Implied in every contract is a duty to deal fairly and in good faith. This duty implies an obligation that neither party will do anything to injure the other's right to the benefits of the agreement. Defendants breached their duty of good faith and fair dealing by terminating the Certificate and Class Certificates while Plaintiffs and putative class members had an ongoing claim, stripping Plaintiffs' and putative class members' ability to receive coverage for ongoing medical treatment.

66. Because of Defendants' breach of contract and breach of the covenant of good faith and fair dealing, Plaintiffs and putative class members suffered damages in the form of unpaid benefits. Plaintiffs and putative class members will continue to suffer from Defendants' breach as Mr. Peters and other putative class members are still undergoing treatment. Thus, Plaintiffs request compensatory damages for all unpaid benefits and specific performance, requiring Defendants to comply with the terms of the Certificate and Class Certificates and pay all benefits incurred by Mr. Peters and putative class members in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request relief as follows:

    a. an order certifying this case as a class action under Fed. R. Civ. P. 23;

    b. compensatory damages in an amount to be proven at trial, including damages for all benefits denied by Defendants where the basis for denial included "[n]o coverage for date of service";

    c. specific performance;

    d. pre- and post-judgment interest at the maximum rate allowed by law; and

    e. any and all other legal and equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of all issues so triable.

Dated: August 7, 2024	Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com

Robert G. Methvin, Jr. (to be admitted *pro hac vice*)
James M. Terrell (to be admitted *pro hac vice*)
P. Michael Yancey (to be admitted *pro hac vice*)
Courtney C. Gipson (to be admitted *pro hac vice*)
Methvin, Terrell, Yancey, Stephens & Miller, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: 205.939.0199
Facsimile: 205.939.0399
E-mail: rgm@mtattorneys.com
jterrell@mtattorneys.com
myancey@mtattorneys.com
cgipson@mtattorneys.com

*Counsel for Plaintiffs*