IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEVERLY PETERS and TIM PETERS, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) No. 24 CV 6949<br>) |
| Plaintiffs, | ) Judge Jeffrey I. Cummings<br>) |
| v. | )<br>) |
| MEDICAL MUTUAL OF OHIO, RESERVE NATIONAL INSURANCE COMPANY, KEMPER CORPORATION, and UNITED INSURANCE COMPANY OF AMERICA, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Beverly Peters and Tim Peters, ("plaintiffs") were enrolled in an insurance plan and elected supplemental coverage for cancer treatment. While Mr. Peters was undergoing covered treatment for his cancer diagnosis, plaintiffs' insurance was cancelled. Plaintiffs subsequently initiated this lawsuit against the insurance companies involved in the administration of their plan: namely, Medical Mutual of Ohio ("Medical Mutual"), Reserve National Insurance Company ("Reserve National"), Kemper Corporation ("Kemper"), and United Insurance Company of America ("United Insurance"). Plaintiffs bring this case pursuant to 28 U.S.C. §1332(d) and allege the four following causes of action: breach of contract and breach of the duty of good faith and fair dealing; fraud; vexatious and unreasonable denial of claims; and civil conspiracy.

Defendants have filed two separate motions, (Dckt. ##32, 29), seeking to dismiss each claim, except for plaintiffs' breach of contract claim, pursuant to Federal Rule 12(b)(6). For the

reasons set forth below, Kemper and United Insurance's motion to dismiss, (Dckt. #39), is granted in part and denied in part, and Medical Mutual and Reserve National's motion to dismiss, (Dckt. #32), is granted in part and denied in part.

## I. LEGAL STANDARD UNDER RULE 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Indeed, it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (same, citing cases).

## II. FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT

The Court draws the facts set forth below from: (1) the facts pleaded in the amended complaint (the "Complaint"), (Dckt. #27); and (2) the documents attached to the Complaint as

exhibits, including the Certificate of Insurance for a Group Cancer and Specified Disease Insurance Policy (the "Certificate") and the December 19, 2022 insurance coverage termination letter ("Coverage Termination Letter").

### A. Plaintiffs' Insurance Policies and Subsequent Termination of those Policies.

Plaintiffs owned a Certificate issued by defendant Reserve National, which at the time of issuance was a subsidiary of defendant United Insurance, which in turn was a subsidiary of defendant Kemper. (Dckt. #27 ¶13). Although the Certificate was issued by Reserve National, several of the benefit checks that plaintiffs received bore Kemper's logo. (*Id.* ¶9). The underlying group policy was issued to the Lawrence County School System, where Mrs. Peters was a schoolteacher. (*Id.* ¶14).

Reserve National received a request from the Lawrence County School System for termination of the group policy with an effective termination date of August 31, 2022. (*Id.* ¶25). Relevant here, the Certificate allowed insureds, like plaintiffs, to port their coverage under certain circumstances so that they could continue receiving the benefits of coverage despite termination of the underlying policy. (*Id.* ¶29). Plaintiffs secured continuing coverage through the portability provision of the Certificate and were receiving benefits for cancer treatment when, on December 19, 2022, they were notified that their "[c]ancer coverage ha[d] terminated effective 2.28.2023." (*Id.* ¶¶30, 35; Dckt. #27-2). The Coverage Termination Letter was sent on Kemper Health letterhead and directed plaintiffs to contact the Kemper Service Center by phone or email with any questions. (Dckt. #27-2). Plaintiffs continued to submit charges, and Kemper continued to pay their claims, through the end of February 2023. (Dckt. #27 ¶39).

After February 2023, Kemper refused to pay for additional claims, and after May 2023, the denials came from Medical Mutual. (*Id.*). The reasons provided for the denials were that the

3

claims were "not covered by plan" (identified as service code "888"), "not covered per plan guidelines" (identified as reason code "PG"), and that there was "no coverage for date of service" (identified as reason code "26"). (*Id.* ¶72).

### B. Medical Mutual Acquires Reserve National.

Days before the Coverage Termination Letter was sent, Medical Mutual acquired Reserve National from Kemper. (*Id.* ¶37). Plaintiffs allege that as part of the acquisition, Kemper, United Insurance, and Medical Mutual collectively executed a plan to terminate substantially all of the ported group supplemental coverage that Reserve National had on its books, which had the effect of "closing a book of business that was providing accident and health coverage to over 30,000 insureds." (*Id.* ¶38). According to plaintiffs, defendants terminated their coverage to "substantially reduc[e] the liabilities acquired by Medical Mutual," (*id.* ¶4), "to make the sale [of Reserve National] more attractive," (*id.* ¶69).

### C. The Present Lawsuit.

Plaintiffs bring the following claims: breach of contract and breach of fiduciary duty against Reserve National (Count I); fraud against Reserve National and its former parent companies Kemper and United Insurance (Count II); violations of Section 155 of the Illinois Insurance Code ("Section 155") against all defendants (Count III); and civil conspiracy against all defendants (Count IV). Defendants have moved to dismiss the claims against them except for the breach of contract claim. The Court addresses the parties' arguments in turn below.

4

III.    ANALYSIS

    A.    **Plaintiffs Have Sufficiently Alleged Actions by Kemper and United Insurance Such That They Should Not Be Dismissed as Defendants at this Stage.**

Kemper and United Insurance move to dismiss the claims against them on grounds that: (1) they are separate entities from Reserve National; (2) as parent corporations, they generally are "not liable for the actions of a subsidiary;" and (3) they cannot be liable for any actions alleged in the Complaint because the complained-of policy termination took place *after* United Insurance sold Reserve National to Medical Mutual on December 1, 2022. (Dckt. #40 at 4–7). Plaintiffs respond that they have alleged actions taken by Kemper and United Insurance both before, and as part of, the sale of Reserve National to Medical Mutual such that dismissal of Kemper and United Insurance is not appropriate at this juncture. The Court agrees.

In the Complaint, plaintiffs allege that prior to the acquisition, "[d]efendants conspired to terminate all of Reserve National's ported polices and Group Certificate health coverage as part of its sale to Medical Mutual; thereby, substantially reducing the liabilities acquired by Medical Mutual." (Dckt. #27 ¶4). Plaintiffs further allege that after the sale, Kemper and United Insurance participated in alleged wrongs by continuing to administer their claims until February 2023. In support, plaintiffs point to their allegations that several benefit payment checks bore Kemper's logo, the Kemper Service Center sent plaintiffs the December 19, 2022 termination letter, the Explanation of Benefits letters—even those bearing Medical Mutual's logo—continued to be sent from Kemper Service Center's address, and "the termination letter explained that Reserve National was no longer affiliated with Kemper but was allowed to temporarily continue using its trademarks pursuant to a licensing agreement with Kemper Corporation." (*Id.* ¶9).

5

Defendants argue that plaintiffs' final allegation, regarding the use of Kemper's trademarks, falls short because "one entity's authorized use of another entity's trademark is insufficient to establish a claim against the licensor." (Dckt. #40 at 5). This argument fails for two reasons. First, this argument wholly ignores plaintiffs' allegations regarding Kemper's involvement in the denial of plaintiffs' claims—including that the communications plaintiffs received used Kemper's logo and pointed plaintiff to Kemper Service Center. Second, while it is generally true that licenscing a trademark "does not automatically saddle the licensor with the responsibilities under state law of a principal for his agent," *Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327 (7th Cir. 1979), it is also true that "a franchisor . . . can be held liable when it participated in the alleged wrongs," *Bartolotta v. Dunkin' Brands Grp., Inc.*, No. 16 CV 4137, 2016 WL 7104290, at *2 (N.D.Ill. Dec. 6, 2016). That is exactly what plaintiffs have alleged here—including that the benefit letters continued to bear Kemper's name even after the sale to Medical Mutual and pointed plaintiffs to Kemper for customer support.

Thus, the Court finds plaintiffs have adequately alleged that Kemper and United Insurance engaged in acts before and after the termination of plaintiffs' coverage such that dismissal of claims against them is not appropriate at this stage of the litigation. *See, e.g.*, *Gipson v. Med. Mut. of Ohio*, No. 1:24-CV-00103, 2025 WL 1921431, at *2 (M.D.Tenn. July 11, 2025) (denying Kemper and United Insurance's motion to dismiss where plaintiffs "adequately alleged that Kemper and United Insurance were involved in the decision to terminate the policies at issue and were involved in the administration of claims before and after the termination. . .").

B. **Plaintiffs Fail to Allege Breach of Good Faith and Fair Dealing Claims.**

Reserve National argues that plaintiffs' breach of good faith and fair dealing claims must be dismissed because they are preempted by Section 155. Plaintiffs fail to respond to Reserve

National's argument, and they have therefore waived these claims. *See, e.g.*, *Sroga v. Rendered Servs. Inc.*, No. 19-CV-2299, 2019 WL 6173424, at *1 (N.D.Ill. Nov. 20, 2019) ("It is a longstanding rule that a plaintiff waives his claims when he fails to develop arguments or fails to respond to alleged deficiencies in a motion to dismiss.") (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (recognizing that a complaint is subject to dismissal where a plaintiff does not file a response supporting the legal adequacy of the complaint).

But, even if plaintiffs had not waived their breach of good faith and fair dealing claims, the Court would still grant defendants' motion to dismiss them. In Illinois, "[e]very contract contains an implied covenant of good faith and fair dealing. *Diligent Payments, LLC v. Carpay, Inc.*, No. 24-CV-05125, 2025 WL 2430469, at *7 (N.D.Ill. Aug. 22, 2025) (cleaned up). "This good-faith principle, however, is used only as a construction aid in determining the intent of contracting parties." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996). It does not, by itself, create an independent cause of action in contract. *Beritself, Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir.1992).

The Illinois Supreme Court has held, excluding circumstances not applicable here, that a common law tort claim alleging bad faith or unfair dealings is preempted by Section 155 if the plaintiff fails to allege elements of a separate tort. *See Cramer*, 675 N.E.2d at 903–04. Here, plaintiffs allege that "Reserve National . . . at the direction of its parent companies, Kemper, United, and Medical Mutual . . . breached its duty of good faith and fair dealing by terminating the Certificate . . . while [plaintiffs] had an ongoing claim, and by exercising its discretion to deny coverage for [plaintiffs'] claims after February 28, 2023." (Dckt. #27 ¶66). These allegations are quintessential claims for bad faith and unfair dealing which do not allege

7

elements of a separate tort. Without more, plaintiffs' breach of good faith and fair dealing claim is preempted by Section 155 and must be dismissed. *See, e.g.*, *Kush v. American States Ins. Co.*, 853 F.2d 1380, 1385 (7th Cir.1988) (citing cases); *Rodriguez v. Mut. of Omaha*, No. 22-CV-6121, 2023 WL 7298929, at *2 (N.D.Ill. Nov. 6, 2023) ("The Illinois Supreme Court has made clear that plaintiffs suing under Section 155 cannot bring tort actions for the same "unreasonable or vexatious" conduct addressed by the Insurance Code provision.") (cleaned up); *Emp. Ins. of Wausau v. Pacer Int'l, Inc.*, No. 04 C 4563, 2005 WL 61481, at *4 (N.D.Ill. Jan. 11, 2005) (concluding that plaintiff's allegations which were "nothing more than an accusation of bad faith and unfair dealing" were preempted by Section 155).

    **C.    Plaintiffs Fail to Allege a Fraud Claim.**

Under Illinois law, a common law fraud claim requires plaintiffs to prove: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 888 N.E.2d 24, 35–36 (Ill. 2008). Pursuant to Federal Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting known fraud or mistake shall be stated with particularity." Thus, a complaint alleging fraud must provide "the who, what, when, where, and how." *U.S. ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 605 (7th Cir. 2005).

Defendants argue plaintiffs' fraud claims must be dismissed because they fail to allege: (1) that defendants made any false statements to plaintiffs; and (2) that defendants were under a duty to disclose the reason Reserve National chose to terminate the Certificates. The Court agrees.

Here, plaintiffs allege that defendants "suppressed their intentions" to terminate plaintiffs' Certificates in an effort to make the purchase of Reserve National more attractive to Medical Mutual. (Dckt. #27 ¶70). This allegation does not identify a "statement," let alone a false statement of material fact, sufficient to support plaintiffs' fraud claim. Rather, the only representation alleged to have been made by defendants—that is, the statement that plaintiffs' coverage would terminate on February 28, 2023—was true. Indeed, after this date, plaintiffs allege their claims were denied.

Plaintiffs argue that their fraud claim against Kemper is sufficiently pleaded based on their allegations that Kemper knowingly misrepresented in the Termination Coverage Letter that Reserve National was no longer Kemper's affiliate despite the fact that plaintiffs continued to receive benefits letters from Kemper. But plaintiffs' allegations are contradicted by the Coverage Termination Letter, which provides that

> As of December 1, 2022, Reserve National . . . is part of the Medical Mutual family of companies and is no longer affiliated with the Kemper Corporation family of companies. The Kemper and Kemper Health trademarks and similar or derivative trademarks are temporarily being used by Reserve National Insurance Company under license from Kemper Corporation.

(Dckt. #27-2 at 2). Plaintiffs allege in the Complaint that the denials of coverage after February 2023 came from Kemper, until May 2023 when the denials came from Medical Mutual. This is entirely consistent with the licensing agreement set out in the Coverage Termination Letter. While plaintiffs now allege this statement constitutes fraud, "when an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Accordingly, the Court finds defendants' statement that Reserve National was no longer an affiliate of Kemper does not adequately allege a false statement of material fact.

9

Plaintiffs also argue that they have alleged a false statement based on their allegation that upon "information and belief" Kemper continued to service plaintiffs' claims. But, allegations of fraud made on "information and belief" do not satisfy Rule 9(b)'s pleading with particularity requirement. *See, e.g., Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683–84 (7th Cir. 1992). Thus, this allegation likewise does not amount to a false statement of material fact.

Defendants further argue that plaintiffs have failed to allege a claim for fraud by omission. "An omission or failure to disclose . . . may be actionable as constructive fraud or fraudulent concealment if the defendant was under a particular duty to speak, which may stem from a fiduciary duty or a similar relationship of trust and confidence." *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639, 649 (7th Cir. 2019). Defendants argue that they owed no duty to inform plaintiffs of the reason for the termination because "it is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 51 (Ill.App.Ct. 2004).

Despite this general rule, "a duty to disclose might still arise when a defendant "tells a half-truth and then becomes obligated to tell the full truth." *Brown v. Cont'l Cas. Co.*, 591 F.Supp.3d 340, 350–51 (N.D.Ill. 2022) (cleaned up). In *Brown*, the court found that plaintiff had pleaded a viable duty to disclose based on defendant's statement that it would only raise premiums on a nationwide basis for a particular age group—while omitting the entire truth that the premium increases would vary by an insured's State of residency. *Id.* at 351. Plaintiffs rely on *Brown* to argue that defendants provided a half-truth here—namely, that plaintiffs' cancer coverage had terminated—while omitting the entire truth—that defendants intended for the Certificates to be terminated to make the sale of Reserve National more attractive.

10

But *Brown* is distinguishable from the present case. In *Brown*, the court held that the "half-truth" alleged by the plaintiffs was a promise made by the insurer in the relevant certificates to only raise the premium if it did so nationwide and on a premium class basis, while presumably knowing that it could not fulfill this promise because state regulatory agencies would not permit premium increases in a consistent manner throughout the country. *Brown*, 591 F.Supp.3d at 351.

Here, plaintiffs do not allege any such "half-truth" in the Certificates—and the Certificates give both parties the ability to terminate the contract at will. (Dckt. #27-1). Reserve National's letter terminating the certificate was not a "half-truth." Instead, the letter was the full truth, in that it conveyed to one contracting party (plaintiffs) the election made by the other contracting party (Reserve National) to terminate the Certificates pursuant to its express right to do so under the terms of the contracts. Accordingly, the Court finds the Certificates did not create a fiduciary duty on the part of Reserve National to disclose to plaintiffs the reason Reserve National chose to terminate the Certificates. For these reasons, the Court finds plaintiffs have failed to plausibly allege their fraud claim and it must be dismissed.

**D.     Plaintiffs Have Alleged "Vexatious and Unreasonable" Conduct Under Section 155.**

Under Section 155 of the Illinois Insurance Code, an insured may recover attorney's fees and costs "when the insurer's denial of coverage or delay in payment is 'vexatious and unreasonable.'" *TKK USA, Inc. v. Safety Nat. Cas. Corp.*, 727 F.3d 782, 793 (7th Cir. 2013); 215 ILCS 5/155. As courts have recognized, Section 155 is "designed to provide an extracontractual remedy to 'insureds who encounter unnecessary difficulties resulting from an insurance company's unreasonable and vexatious refusal to honor its contract with the insured.'" *Sutherland-Garnier Funeral Home, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 3:23-CV-1501-

11

MAB, 2023 WL 8715859, at *2 (S.D.Ill. Dec. 18, 2023), *quoting First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002) (cleaned up).  To prevail on a claim under Section 155, the insured must show "that the insurer's behavior was willful and without reasonable cause." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000).  An insurer's actions are not vexatious and unreasonable, however, when "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Id.* (cleaned up).  "Whether an insurer acted unreasonably or vexatiously presents an issue of fact . . . requiring courts to consider the totality of circumstances." *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007) (cleaned up).

To properly state a claim under Section 155 then, "a plaintiff must allege some facts in support of [its] allegations that the defendant acted unreasonably or vexatiously in denying the claim." *Felsenthal v. Travelers Prop. Cas. Ins. Co.*, No. 12 C 7402, 2013 WL 1707931, at *4 (N.D.Ill. Apr. 19, 2013).  "Simply pleading that [the defendant] knowingly and intentionally refused to provide insurance coverage and that [the defendant's] refusal 'was and continues to be vexatious and unreasonable,' without some modicum of factual support, is insufficient to plausibly suggest that [the plaintiff] is entitled to relief under the statute." *Kondaur Cap. Corp. v. Stewart Title Co.*, No. 11 C 7038, 2012 WL 367054, at *5 (N.D.Ill. Feb. 2, 2012), *quoting Scottsdale Ins. Co. v. City of Waukegan*, No. 07 C 64, 2007 WL 2740521, at *2 (N.D.Ill. Sept. 10, 2007).

Here, defendants contend that plaintiffs "merely allege" that defendants refuse to pay plaintiffs' claims and that their denial was "vexatious and unreasonable." (Dckt. #33 at 11).  In

12

their response, plaintiffs point to their allegations that after the sale, defendants "denied coverage for services rendered on or after February 28, 2023" and "vexatiously and unreasonably denied coverage by wrongly applying service codes '888' ('NOT COVERED BY PLAN') and reason codes 'PG' ('Not covered per plan guidelines') and '26' ('No coverage for date of service')." (Dckt. #27 ¶¶78–80). Plaintiffs further point to their allegations that defendants engaged in a scheme to terminate all of Reserve National's ported policies and thereby, reduce the liabilities acquired by Medical Mutual, making the sale to Medical Mutual more attractive.

The Court finds these allegations, while sparse, are sufficient to pass muster at this stage. *Cf. Souza v. Erie Ins. Co.*, No. 22-CV-3744, 2023 WL 4762712, at *7 (N.D.Ill. July 25, 2023) (finding plaintiffs' allegations which identified examples of vexatious and unreasonable conduct provided "enough factual color to her allegations to allow the claim to go forward at this stage") with *Leonard S. v. Health Care Serv. Corp.*, No. 22 CV 6038, 2023 WL 7182988, at *3 (N.D.Ill. Nov. 1, 2023) (granting motion to dismiss Section 155 claims where "the complaint is bereft of any plausible allegations that HCSC's conduct was unreasonable or vexatious"); *and Meade, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 20 C 05293, 2023 WL 3058781, at *2 (N.D.Ill. Apr. 23, 2023) (dismissing Section 155 claim where plaintiff's allegations merely added "vexatiously and unreasonably" to the beginning of "what otherwise are the exact same breaches alleged in Count I's breach of contract claim").

Defendants argue that plaintiffs' Section 155 claims must nonetheless be dismissed because plaintiffs allege that defendants' *cancellation* of the certificates was vexatious, rather than defendants' handling of plaintiffs' post-cancellation *claims*, and that Section 155 protects only the latter. Defendants further argue that once the ported Certificates were terminated, Reserve National (or defendants) had a right to deny plaintiffs' claims for post-termination

13

treatment because the Certificates were terminated and there was no coverage. But the cases that defendants cite in support of these arguments are either at another stage of litigation, *see Cromeens, Holloman, Siber, Inc. v. AB Volvo*, 349 F.3d 376, 395–96 (7th Cir. 2003) (affirming summary judgment), or do not involve Section 155 claims, *see Jespersen v. Minnesota Min. & Mfg. Co.*, 681 N.E.2d 67, 71 (Ill.App.Ct. 1997), *aff'd,* 700 N.E.2d 1014 (Ill. 1998). Moreover, the Complaint contains allegations that defendants "vexatiously and unreasonably denied *coverage* by wrongly applying service codes." (Dckt. #27 ¶79). Accordingly, the Court does not find defendants' argument persuasive and their motions to dismiss plaintiffs' Section 155 claims are denied.

### E. Plaintiffs Fail to Allege a Civil Conspiracy Claim.

Finally, defendants argue that plaintiffs' civil conspiracy claims must be dismissed because plaintiffs fail to state an underlying tort claim, an element necessary to maintain a civil conspiracy claim. "Civil conspiracy is defined as a combination of two or more persons for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means." *Lewis v. Lead Indus. Ass'n*, 178 N.E.3d 1046, 1053 (Ill. 2020). To state a claim for civil conspiracy, a plaintiff must allege "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)).

Plaintiffs allege that defendants "agreed and conspired" that "Kemper would wrongfully deny [p]laintiffs and putative class members' claims on or after February 28, 2023," and that the

14

"purpose of [defendants'] agreement was to accomplish an unlawful act—the wrongful termination of coverage and denial of claims." (Dckt. #27 ¶83). Based on these allegations, defendants argue that plaintiffs' claim "constitutes a purported claim for breach of contract" and fails to "allege that Reserve National or Medical Mutual entered any agreement to commit a tortious act." (Dckt. #33 at 13).

In response, plaintiffs point to their fraud claims—namely, that Kemper and United Insurance entered into an agreement with Medical Mutual to sell Reserve National and "to make the sale more attractive to Medical Mutual, Defendants Kemper, United Insurance, and Reserve National intended for the Certificates to be terminated so that they could contend that the ported cancer coverage was extinguished." (*See* Dckt. #27 ¶69). According to plaintiffs, the goal was to "substantially reduc[e] the liabilities acquired by Medical Mutual." (*Id.* ¶4).

As set forth above, plaintiffs have not adequately alleged a fraud claim, thus there is no underlying tort to support their conspiracy claim. *See Bressner v. Ambroziak*, 379 F.3d 478, 482–83 (7th Cir. 2004) (affirming dismissal of a civil conspiracy claim sounding in fraud because the complaint did not plead actionable fraud and thus failed to allege "the necessary tortious or unlawful overt act"); *Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009 WL 1543709, at *11 (N.D.Ill. May 29, 2009) ("Failure to allege sufficiently the underlying fraud claim will result in dismissal of the conspiracy claim."); *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 884 N.E.2d 700, 711 (Ill.App.Ct. 2008) ("[Defendants] failed to adequately allege their underlying claim of common-law fraud, and thus their conspiracy claim fails as a matter of law.").

Moreover, plaintiffs alleged purported agreement is the wrongful termination of coverage and denial of claims, i.e., an alleged agreement to breach the certificates—which is not a tort. Accordingly, defendants' motion to dismiss plaintiffs' civil conspiracy claim is granted.

## CONCLUSION

For all the reasons stated above, Medical Mutual and Reserve National's motion to dismiss, (Dckt. #32), is granted in part and denied in part. Kemper and United Insurance's motion to dismiss, (Dckt. #39), is granted in part and denied in part. Plaintiffs' claims for breach of good faith and fair dealing, fraud, and civil conspiracy are dismissed without prejudice. Plaintiffs are granted until October 20, 2025 to file an amended complaint, if they wish and to the extent that they can do so consistent with this Memorandum Opinion and Order and the dictates of Federal Rule of Civil Procedure 11. If plaintiffs do not file an amended complaint, defendants shall answer by October 27, 2025.

**DATE: September 29, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**